**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 12-cv-00891-MSK-BNB

JECKONIAS N. MURAGARA,

        Plaintiff,

v.

MACKENZIE PLACE UNION, LLC, d/b/a The Mackenzie Place - Colorado Springs,

        Defendant.

_____

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR SUMMARY JUDGMENT**

_____

      **THIS MATTER** comes before the Court pursuant to the Defendant's ("Mackenzie")

Motion for Summary Judgment (**# 24**), and Mr. Muragara's *pro se*[1] response (**# 25**).[2]

---

[1]     The Court construes Mr. Muragara's *pro se* pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in Mr. Muragara's use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve Mr. Muragara of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in this regard, the Court will treat Mr. Muragara according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

[2]     Mr. Muragara's summary judgment response was filed almost two months later than the deadline set by D.C. Colo. L. Civ. R. 7.1(C). Mackenzie moved to strike his response on this ground, but the Court denied that motion without prejudice for failure to confer under D.C. Colo. L. Civ. R. 7.1(A), and Mackenzie did not refile it or file a reply brief preserving an objection to the timeliness of the response. Nevertheless, the Court has several observations on this point: (i) Mr. Muragara's response was undeniably untimely; (ii) Mr. Muragara states that this delay was due to not receiving a copy of Mackenzie's motion by mail (he contends, without support, that

1

## FACTS

Mr. Muragara (a black male and former citizen of the Congo) commenced this action in state court in or about February 2011.  His Complaint **(# 3)** appears to allege that he was terminated from his employment by Mackenzie in October 2010, ostensibly for insubordination. Mr. Muragara contends that his termination was in retaliation for his having complained to Mackenzie officials about racial and national origin harassment that Mr. Muragara was receiving from co-workers.  A fair reading of his Complaint indicates that he asserts claims for a hostile environment based on race, a hostile environment based on national origin, and retaliation, all in violation of Title VII, 42 U.S.C. § 2000e *et seq.*[3]  Mackenzie now moves **(# 24)** for summary judgment on all of Mr. Muragara's claims.

The following facts are treated undisputed, except where a factual dispute is expressly

---

Mackenzie's counsel is "lying" about representing that he was served with a copy of the motion); (iii) notwithstanding that assertion, Mr. Muragara never sought leave to file a response out-of-time; (iv) as noted above, despite being a *pro se* litigant, Mr. Muragara is obligated to comply with the established procedural rules; (v) however, Mackenzie has not identified any particular prejudice that it suffered as a result of Mr. Muragara's untimely response; and (vi) for the reasons stated herein, the Court would likely reach the same result on the merits regardless of whether Mr. Muragara's response was considered or not.  The Court advises Mr. Muragara that any future failure to strictly comply with deadlines set by the Federal Rules of Civil Procedure, the Court's local rules, or orders of the Court will result in the imposition of appropriate sanctions against him, up to and possibly including dismissal of his remaining claim.

[3]     Mr. Muragara's summary judgment response appears to suggest that he was also discriminated on the basis of his religion, insofar as Mackenzie refused his requests to have Sundays off so he could attend church.  Mr. Muragara does mention religious discrimination in the narrative portion of his Complaint, but his Charge of Discrimination with the Colorado Civil Rights Division does not include any reference to religious discrimination.  Because the filing of a charge of discrimination encompassing each discrete, unrelated type of discrimination is a jurisdictional prerequisite to suit under Title VII, *see Jones v. Runyon*, 91 F.3d 1398, 1400 (10th Cir. 1996), Mr. Muragara's failure to include religion in his Charge of Discrimination deprives this Court of jurisdiction over such a claim.

noted.[4]  Mackenzie is a retirement community. On or about August 30, 2010, it hired Mr.

Muragara as a Host in its Food and Beverage Department.  In that position, he was responsible

for "greeting, maintaining [a] reservation list and seeing that residents and guests are seated in

the restaurant in a friendly and efficient manner."  Within a few days, Mr. Muragara was

involved in various minor conflicts with other employees.  He  refused to perform certain tasks

that had been requested of him, he used of a personal cell phone in the dining room despite

having been admonished not to do so, and he interrupted other employees who were dealing with

customers using a raised voice in confrontation with co-workers.[5]

The September 27 discipline[6]

On September 27, 2010, Mr. Muragara was apparently involved in a verbal altercation

---

[4]      It appears that neither side conducted any discovery in this case.  The Court is thus left
with only the affidavit of Tracy Sudman, Mackenzie's Vice President of Human Resources, and
certain exhibits with which to reconstruct the events at issue here.  Mr. Muragara has supplied
only his own brief.  Although that filing is not sworn to under penalty of perjury, the Court will
assume that, if called upon to so swear to the truth of the contents of that response, Mr. Muragara
would do so.  Thus, the Court treats Mr. Muragara's response as an affidavit pursuant to 28
U.S.C. § 1746.
        Given the relatively straightforward presentation of the relevant narrative in Ms.
Sudman's affidavit, and Mr. Muragara's discursive, verbose, and often irrelevant response, the
Court derives the factual posture primarily from Mackenzie's motion papers and supporting
exhibits.  The Court has made all reasonable efforts to ascertain and identify any specific
instances in which Mr. Muragara's response offers specific, non-conclusory assertions that
dispute any of Mackenzie's proffered facts.

[5]      Mr. Muragara contends that, despite his short tenure on the job, he was once named
"employee of the month," and was often given praise by his managers.  The Court will assume,
for purposes of this motion, that Mr. Muragara received both praise and criticism at various
times.

[6]      As will be copiously demonstrated herein, the record is extremely imprecise on the dates
of pertinent events in this case, to the point that the Court is unable to state, with any reliability,
the actual date of any particular event.

with Jessica Lawler, a co-worker.  (The dispute is described as Ms. Lawler asking Mr. Muragara to help her during a busy period by refilling water glasses at a particular table, Mr. Muragara refusing to do so, and Ms. Lawler confronting Mr. Muragara about his refusal.)  Judith Hankerd, Mr. Muragara's immediate supervisor, prepared a "Corrective Action Plan" – essentially a disciplinary notice, regarding the event.[7]  The notice advised Mr. Muragara that he "was raising his voice on the dining room floor as he was arguing with the servers about their request for him to help with the guests," and had been accused of  talking on his cell phone in the bar area and drinking at the host stand.  Mr. Muragara was apparently required to complete a "training shift" with Ms. Hankerd on September 28, during which she reviewed his job description and clarified certain rules he was to follow.

According to Mr. Muragara's summary judgment response, he alleges that in conjunction with the September 28 training meeting, he complained to Ms. Hankerd about "racial slurs, intimidation, and being bullied at work place by co-workers."  Mr. Muragara's response does not specifically recite precisely what he allegedly told Ms. Hankerd at this meeting, stating only that he "reported about the misconduct, intimidation, harassment, and bullying from Jessica toward [him] which happened on September 26, 2010."[8]  Mackenzie disputes this assertion but has supplied no affidavit from Ms. Hankerd or anyone else with personal knowledge of the training

---

[7]	The date on which the notice was prepared is uncertain.  Ms. Hankerd dated it as of September 27, but the text of the notice references, in past tense, remedial training that occurred on the evening of September 28, indicating that the notice was prepared at some point after that. When (or even if) it was actually delivered to Mr. Muragara is unknown.

[8]	The Court assumes Mr. Muragara means the event occurred on September 27, although, given the state of the record, it cannot be sure.

session.[9] Thus, the Court understands Mackenzie to deny that Mr. Muragara complained of harassment or racial epithets at this time.

Mr. Muragara's Charge of Discrimination, filed with the Colorado Civil Rights Division (and attached to his Complaint), offers slight support to both sides' positions.  It states that "On [September 28, 2010],[10] I complained to my supervisor that I was being harassed by my co-workers with racial and verbal harassment.  Although asked, I did not define my complaint." (Emphasis added.)  Thus, taken in the light most favorable to Mr. Muragara, the evidence suggests that Mr. Muragara spoke to Ms. Hankerd on September 28, making generalized complaints "harassment and bullying" by his co-workers, but he did not specifically report any particular racial slurs that were allegedly used against him.

The October 5 discipline/termination

Mackenzie disciplined Mr. Muragara again on October 5, 2010.  On that date, Ms. Hankerd prepared another Corrective Action Plan notice for Mr. Muragara.  That notice described an incident that occurred on September 29, 2010:

Chef Lauren found [Mr. Muragara] on his cell phone at the server

---

[9]     Ms. Sudman's affidavit relates Ms. Hankerd's denial of having received any complaint of harassment from Mr. Muragara on September 28, but this is inadmissible hearsay.

[10]    The actual text of the Charge of Discrimination alleges that Mr. Muragara made his first complaint of racial harassment to management on "August 31, 2010."  Given that Mr. Muragara had only begun working on August 30, 2010, and that his summary judgment response makes no assertion that he experienced hostility and sought out Ms. Hankerd to complain after only one day of work, the Court can only assume that this date in the Charge of Discrimination is in error. The Court assumes that the correct date of this event is on or about September 28, 2010, the date Mr. Muragara's summary judgment response gives for his complaint to Ms. Hankerd.  However, as mentioned later, a formal written complaint by Mr. Muragara does mention harassment beginning on August 31, 2010, although it does not allege that Mr. Muragara lodged a complaint with management as of that date.

> drink station speaking loudly.  She asked him to put the cell phone
> away.  She then told him he was not allowed to use his cell phone
> while at work unless it was an emergency.  [He] began to argue
> with Chef Lauren about this policy and she asked him to please
> stop.  He continued to raise his voice at her and followed her into
> the kitchen.  She repeatedly told him to lower his voice but he
> continued to argue.

The notice stated that, in light of previous discipline, Ms. Hankerd "recommended" that Mr.

Muragara be terminated.

It is not clear to whom that "recommendation" was made.  The record includes a

"Separation Report" document, also completed by Ms. Hankerd,  that apparently effectuated Mr.,

Muragara's termination, although it, too, is ambiguous.  Mr. Muragara's "separation date" is

given as "10/5/2010" (apparently corrected from, or perhaps to, "11/5/2010"), and Ms. Hankerd

has dated her signature on the form as "8/27/10" (which is Mr. Muragara's hire date).  Nothing

in the record conclusively demonstrates whether Mr. Muragara was given a copy of either the

October 5 Corrective Action Plan or when (and how) he was notified of his termination.

Mr. Muragara does not materially dispute the basic contention in the October 5

Corrective Action Plan: that he had a confrontation with "Chef Lauren" (Lauren Stewart), over

the issue of whether Mr. Muragara could use his cell phone at the server station.  He appears to

disagree with the date of that incident – he places it on October 5, the same day Ms. Hankerd

prepared the Corrective Action Report – and his version of the incident apparently begins earlier.

He contends that, on that date, he complained to Ms. Hankerd about an incident involving a co-

worker named Lindsay.  (The Court understands that Mackenzie again denies that Mr. Muragara

made any complaints of discrimination or unlawful harassment to Ms. Hankerd or any other

supervisory employee until after being told of his termination.)  Mr. Muragara states that Lindsay

"was having a hard time with Chef Lauren," and that Lindsay "suddenly came toward [him] and

started harassing, insulting, and bullying at him."  Mr. Muragara does not elaborate on what

Lindsay said or did, much less specify what he told Ms. Hankerd about this event.  He contends

that Ms. Hankerd told Mr. Muragara not to take Lindsay's comments personally and to

understand that Lindsay was actually angry at Ms. Stewart.  Thereafter, Mr. Muragara was

confronted by Ms. Stewart about using his cell phone during work.  (Mr. Muragara does not

address Mackenzie's contention that he proceeded to argue with Ms. Stewart or raised his voice.)

Mr. Muragara contends that Ms. Stewart's instruction not to use his phone during work time was

contrary to what other employees were allowed to do.  Notably, Mr. Muragara contends that Ms.

Stewart stated to him that "as I did it to Lindsay, I'll take care of you too."

It is somewhat difficult to untangle the specifics of this particular event.  Mackenzie

contends that the altercation between Mr. Muragara and Ms. Stewart occurred on September 29,

but that the Corrective Action Plan memorializing it was not issued until October 5.  (No

explanation is offered for the delay between these two dates.)  Mr. Muragara unambiguously

asserts that his confrontation with Lindsay, his report of that confrontation to Ms. Hankerd, and

his subsequent confrontation with Ms. Stewart all occurred on October 5.  Mr. Muragara's

Charge of Discrimination is no help in resolving this disparity; if anything, it only muddies the

waters.  It indicates that Mr. Muragara had received re-training relating to the first Corrective

Action Plan on September 29, 2010 (rather than September 28, as the Corrective Action Plan

recites); that he was thereafter "suspended" from that date until October 5, 2010; that on October

5, 2010, he was "discharged for alleged insubordination as soon as [he] came in"; and that it was

only after having been informed of his termination that he "let the manager know [he] had been

7

verbally harassed."

At some unspecified time and under unknown circumstances, Mr. Muragara delivered a letter dated October 5, 2010, to Ms. Hankerd.  The letter is not mentioned in Ms. Sudman's affidavit or, in any detail, in Mr. Muragara's response.  Mackenzie mentions the October 5 letter in its briefing (and discovering, "for the first time," Mr. Muragara's complaints of co-worker harassment) but does not describe when or how it obtained the letter.  As noted above, the Charge of Discrimination suggests that it was delivered to Mackenzie after Mr. Muragara was told he was terminated, but how long after (*i.e.* whether the letter was written before or after he was advised of his termination) is unclear.  The letter restates Mr. Muragara's contention that he was harassed by co-workers and subjected to "ethnic slurs" (which, once again, are not specified or otherwise elaborated upon in the letter) since August 31, 2010; references "our meeting" on September 28 and an apparent discussion between Mr. Muragara and Ms. Hankerd "on how you should prevent the harassment at the workplace"; and states that Mr. Muragara will not tolerate "retaliation of any kind . . . because I've complained about preventing harassment."  It is not entirely clear whether this final passage refers to Mr. Muragara being "suspended" on or about September 28, 2010 (as mentioned in his Charge of Discrimination, but not in his summary judgment response),[11] or whether it is in reference to his discharge (both words are used in different places the letter, and both in a somewhat ambiguous context).[12]

---

[11]    Mr. Muragara's summary judgment response does mention a "suspension which occurred on October 5, 2010."  The Court assumes this is actually a reference to his termination as of that date, but, once again, cannot be certain given the ambiguity in the record.

[12]    Ms. Sudman subsequently commenced an investigation into Mr. Muragara's allegations in the letter, but ultimately concluded that she could not substantiate them.  Having occurred after the relevant events, that investigation is ultimately irrelevant to the issues presented on the

Mackenzie's summary judgment motion contends: (i) Mr. Muragara's hostile environment claims fail as a matter of law because the harassment he identifies is not sufficiently severe or pervasive and because he fails to demonstrate a basis for Mackenzie's liability for any co-worker harassment of which it was not informed; (ii) any disparate treatment claim relating to Mr. Muragara's discharge fails because Mr. Muragara cannot establish adequate performance or show that Mackenzie's stated reason for terminating him (insubordination) is pretextual; and (iii) any retaliation claim fails because Mr. Muragara did not engage in protected activity prior to his termination; that if he did, he cannot demonstrate a causal connection between it and his termination; and even if he can, he cannot show that Mackenzie's stated reason for his termination was pretextual.

## ANALYSIS

### A.  Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Substantive law governs what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of

instant motion.

and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter

for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment

motion, a court views all evidence in the light most favorable to the non-moving party, thereby

favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir.

2002).

       If the movant has the burden of proof on a claim or defense, the movant must establish

every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R. Civ. P.

56(c)(1)(A).  Once the moving party has met its burden, to avoid summary judgment the

responding party must present sufficient, competent, contradictory evidence to establish a

genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th

Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine

dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material

fact, no trial is required.  The court then applies the law to the undisputed facts and enters

judgment.

       If the moving party does not have the burden of proof at trial, it must point to an absence

of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove.

If the respondent comes forward with sufficient competent evidence to establish a *prima facie*

claim or defense, a trial is required.  If the respondent fails to produce sufficient competent

evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of

law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**B.  Hostile environment claims**

       The Court assumes that Mr. Muragara asserts claims for both racially-based and national

origin-based hostile work environments.  To establish such a claim, Mr. Muragara must show: (i) that he was subject to unwelcome harassment; (ii) the harassment was so severe and pervasive as to alter the terms and conditions of his employment; (iii) the harassment was based on his race and/or national origin; (iv) the harassment was both objectively and subjectively offensive; and (v) there is a basis to hold Mackenzie liable for the harassment.  *See generally Faragalla v. Douglas County School Dist.*, 411 Fed.Appx. 140, 151-52 (10th Cir. 2011) (unpublished), *citing Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1144 (10th Cir. 2008).

   The Court agrees with Mackenzie that Mr. Muragara has failed to come forward with specific facts demonstrating that any racially- or national origin-based harassment he received was sufficiently severe or pervasive.  Mr. Muragara's response offers only his own conclusions about the contents of the harassing comments and actions he suffered; at no time does he identify any of the specific "epithets" directed at him, nor describe in any meaningful detail any of the other conduct underlying these claims.  His conclusory assertions are insufficient to carry Mr. Muragara's burden of demonstrating a genuine dispute of fact.  *See James v. Wadas*, 724F.3d 1312, 1315 (10th Cir. 2013).  At best, the record reflects that Mr. Muragara had a brief verbal altercation with Ms. Lawler, and another such altercation with Ms. Stewart, without any evidence of either woman using racial slurs against Mr. Muragara, or even resorting to particular insults directed towards him.  Mr. Muragara generalized contentions that unnamed employees directed unspecified "epithets" and "harassment" against him is simply too conclusory to survive summary judgment.

   Even if the Court were to consider Mr. Muragara's Charge of Discrimination, attached to his Complaint, to be an additional affidavit in support of his claims, his hostile environment

claims nevertheless would fail.  That Charge adds only the additional, bowdlerized assertion that "my co-worker had called me a N%@ger," without any further elaboration.  Even if on one occasion, an unidentified co-worker called Mr. Muragara a "nigger," as offensive and unnecessary as the comment is, it is sufficient of itself to create an actionable claim of hostile work environment.  *See Foreman v. Western Freightways, LLC*, ___ F.Supp.2d ___, 2013 WL 3975162 (D.Colo. Aug. 1, 2013) (slip op.) *and cases cited therein*.  Moreover, because Mr. Muragara's admits that he did not actually specify the nature of the "epithets" when he complained to Ms. Hankerd (despite being asked), the Court has grave doubt that Mr. Muragara can establish Mackenzie's liability for a co-worker's harassment.  Accordingly, Mackenzie is entitled to summary judgment on Mr. Muragara's hostile environment claims.

### C.  Disparate treatment

Assuming that Mr. Muragara is asserting a disparate treatment claim – *i.e.* that his termination was motivated by racial or national origin animus – the Court again agrees with Mackenzie that Mr. Muragara has failed to demonstrate a colorable claim.

To state a claim for disparate treatment, Mr. Muragara must first establish a *prima facie* case by showing: (i) he is a member of a protected class; (ii) he possessed the minimum objective qualifications for his position; (iii) he suffered an adverse employment action; and (iv) that action occurred in circumstances giving rise to an inference of discrimination.  If he carries that burden, Mackenzie must articulate a legitimate, non-discriminatory reason for the adverse action, and Mr. Muragara bears the burden of showing that proffered reason to be a pretext for discrimination.  *See Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir.2012).

The Court rejects Mackenzie's initial argument - that Mr. Muragara cannot establish a

*prima facie* case because he was not "qualified" for his position.  Mackenzie's argument – that

he was "unqualified" because he performed poorly – reflects a misunderstanding of this element.

Consistent with the *prima facie* case's task of screening out only the most meritless claims, the

"qualification" element inquires only as to whether the employee met the bare minimum

<u>objective</u> qualifications for the job he held or desired.  The requirement of qualification is not an

issue pertaining to the employee's actual job performance.[13]

However, the Court agrees with Mackenzie that Mr. Muragara cannot demonstrate the

fourth element of the *prima facie* case – that his termination arose in circumstances giving rise to

an inference of racial or national origin discrimination.  Mr. Muragara does not dispute that he

was disciplined twice in short succession, both times due to use of his cell phone while at work,

and that the confrontation that led to his termination – that with Ms. Stewart – occurred when he

was using his phone.  He contends, in mostly conclusory terms, that other employees were

allowed to use their phones during work hours, but he does not specify the races or national

origins of such employees, nor has he articulated any facts indicating that the person who

decided to terminate him – Ms. Hankerd – harbored any racial or national origin animus against

him. Indeed, it appears that Ms. Hankerd hired him two months earlier.[14]

Courts are reluctant to infer discriminatory animus when the same person both hires and

fires an employee within a short period of time, if the employee's protected classification is

---

[13]        Such interpretation would conflate the qualification requirement with the employee's
ultimate burden of disproving the employer's oft-proffered justification that the adverse action
was taken because of the employee's poor performance. *EEOC v. Horizon/CMS Healthcare
Corp.*, 220 F.3d 1184, 1193 (10th Cir. 2000).

[14]        Mackenzie represents that Ms. Hankerd's signature appears on Mr. Muragara's job
application, "approving" it.  The signature is illegible, but in the absence of a dispute on that
point, the Court will assume that it is Ms. Hankerd's.

facially obvious.  *See generally Burney v. County Commissioners*, 413 F.Supp.2d 1195, 1200 (D.Kan. 2006) *and cases cited therein*.  Here, Mr. Muragara's races, and presumably his foreign ancestry, are characteristics that would have been obvious to Ms. Hankerd at the time of his hiring. Thus, the Court declines to infer that such characteristics were the basis of her deciding to fire him only a few months later.  Thus, the Court finds that Mr. Muragara fails to demonstrate a *prima facie* case of disparate treatment on the basis of race or national origin relating to his termination, and Mackenzie is entitled to summary judgment on any such claim.

### D.  Retaliation

To establish a claim of prohibited retaliation under Title VII, Mr. Muragara must show: (i) that he engaged in protected activity; (ii) that he suffered an adverse employment action; and (iii) there is a causal connection between the protected conduct and the adverse action.  If he carries that burden, Mackenzie is obligated to articulate a legitimate, non-retaliatory reason for the adverse action, and Mr. Muragara must ultimately show that proffered reason to be a pretext for retaliation.

The record, taken in the light most favorable to Mr. Muragara, establishes that he engaged in protected conduct by complaining of perceived racial harassment to Ms. Hankerd, orally on September 28, and again on October 5.  This fact is asserted both in Mr. Muragara's Charge of Discrimination and in his response, and Mackenzie's submissions (particularly the hearsay assertion in Ms. Sudman's affidavit that Ms. Hackerd denies hearing such a complaint on September 28) do not clearly and unambiguously refute that contention.  It is also undisputed that Mr. Muragara suffered an adverse action – termination of his employment on October 5.

Mackenzie argues that there is no apparent causal connection between these events.

14

Typically, a causal connection is demonstrated by close temporal proximity between the protected act and adverse action. *Conroy v. Vilsack*, 707 F.3d 1163, 1181 (10th Cir. 2013). Here, Mr. Muragara's complaint to Ms. Hankerd on September 28 preceded his termination by only one week. This is sufficient to raise an inference of causation.

Mackenzie argues that no inference of causation can be found here because Mr. Muragara did not lodge any complaints until after his termination on October 5. This contention improperly assumes away Mr. Muragara's contention that he lodged a complaint with Ms. Hankerd on September 28. Because the Court must resolve all disputed facts in Mr. Muragara's favor at this stage of the litigation, it rejects Mackenzie's argument on this point.

Having concluded that Mr. Muragara has demonstrated a colorable *prima facie* claim of retaliation, the Court turns to Mackenzie's proffered reason for his termination: insubordination towards Ms. Stewart and poor performance generally. The burden shifts to Mr. Muragara to show that reason is false, and that retaliation for making a complaint was the real reason for the termination. To show the proffered justification to be pretextual, Mr. Muragara must demonstrate that Mackenzie's reasons suffer from such "weakness, implausibility, inconsistency, incoherency, and contradiction" that the jury could find them unconvincing. *Debord v. Mercy Health System of Kansas*, 737 F.3d 642, 655 (10th Cir. 2013).

The Court finds the record here to be so inconsistent and incoherent as to raise a colorable inference that  Mackenzie's proffered reason for Mr. Muragara's termination is a pretext for retaliation. The Court observes that although Mr. Muragara admits that he was using his phone at the server station when confronted by Ms. Stewart, he contends – and the Court treats as true for purposes of this motion – that other employees were permitted to use their

phones at this location.  Moreover, both Mr. Muragara's Charge of Discrimination and his

summary judgment response emphasize that Ms. Stewart had expressed an intention to "get rid

of me," permitting the inference that Ms. Stewart may have instigated or embellished Mr.

Muragara's "insubordination" to effect his termination.  Coupled with these facts are a variety of

inconsistencies in the record that call into doubt the very timeline of events here.  Ms. Hankerd's

initial Corrective Action Plan appears to have been backdated to September 27, given that it

recites events occurring on September 28, which, conveniently, is the date Mr. Muragara

allegedly made his first complaint to her.  The second Corrective Action Plan, by contrast, is

dated nearly a full week after the event giving rise to it allegedly occurred, with no explanation

by Mackenzie for that delay.  Mr. Muragara's Separation Report is misdated in two locations,

calling it into doubt as well.  Taken together, these facts might be sufficient to permit a

reasonable factfinder to disbelieve Mackenzie's stated reason for terminating Mr. Muragara and

conclude that the real reason for that termination was that he had complained to Ms. Hankerd

about being racially harassed.

Accordingly, Mr. Muragara's retaliation claim will proceed to trial.

**CONCLUSION**

For the foregoing reasons, Mackenzie's Motion for Summary Judgment **(# 24)** is

**GRANTED IN PART**, insofar as Mackenzie is entitled to summary judgment on Mr.

Muragara's claims of hostile environment harassment and disparate treatment, and **DENIED IN**

**PART**, insofar as Mr. Muragara's retaliation claim will proceed to trial.  The parties shall begin

preparation of a joint proposed Pretrial Order as directed by the Trial Preparation Order **(# 20)**

and shall jointly contact chambers to schedule a Pretrial Conference within 14 days.

16

Dated this 28th day of January, 2014.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge